IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 06-61009-CIV-MOORE/GARBER

JASON S. CRAIG,

    Plaintiff,

vs.

FOLDFAST, INC., a Florida corporation, and
HSN, L.P., a Delaware limited partnership

    Defendants.
_____/

## ORDER ON CLAIM CONSTRUCTION

THIS CAUSE is before the Court for a claim construction ruling pursuant to *Markman v. Westview Instruments*, 517 U.S. 370, 116 S.Ct. 1384 (1996). The Court held a *Markman* hearing on March 19, 2007, and has carefully considered the parties' briefing and the pertinent portions of the record.

**I.    Background**

This case arises out of Foldfast, Inc.'s and HSN, L.P.'s (collectively, "Defendants") alleged infringement of U.S. Patent No. 5,011,052, granted April 30, 1991, entitled "Folding Device for Apparel" (the "052 Patent"). Compl. at 2. The Plaintiff is Jason S. Craig ("Plaintiff"), owner of the 052 Patent. Id. Plaintiff alleges Foldfast, while aware of the 052 Patent, has willfully infringed on the 052 Patent by selling the plastic FlipFold garment folding device. Id. Plaintiff further alleges HSN purchased Foldfast's FlipFold garment folding devices and sold the devices as FlipNFold garment folding devices. Id. at 2-3. Plaintiff's complaint includes one count of patent infringement pursuant to 35 U.S.C. § 271(a)(b) & (c) based on

alleged infringement of Claim 5 of the 052 Patent, claiming irreparable harm and asking the Court to grant a permanent injunction and award damages. Id. at 3-4. Claim 5 of the 052 Patent describes:

> A manually operated shirt folding device comprising:
> (a) a flat and rectangular shaped member
> (b) said member being dimensional for receiving a T-shirt upon its upper surface
> (c) a plurality of creases formed in said member which are oriented in vertical and horizontal directions,
> (d) said vertical creases allowing said member to be manually folded to allow the sides of said shirt to be folded inwardly for reducing the width dimension of said shirt,
> (e) said horizontal creases allowing said member to be manually folded in half to reduce the vertical dimension of said shirt
> (f) whereby said horizontal and vertical creases allow said member to uniformly package said T-shirt in a manually repetitive manner.

Compl., Ex. A at 9.

## II.   Analysis

### A.   Claim Construction

"A literal patent infringement analysis involves two steps: the proper construction of the asserted claim and a determination as to whether the accused method or product infringes the asserted claim as properly construed." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). At this stage, the Court is only construing the patent claims for the purpose of determining "what is and is not covered by the technical terms and other words of the claims." *Netword, LLC v. Centraal Corp.* 242 F.3d 1347, 1352 (Fed. Cir. 2001). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 38 F.3d 1111, 1115 (Fed. Cir. 2004). The words in a claim "are generally given their ordinary and customary meaning." *Vitronics*, 90 F.3d at 1582. "[T]he ordinary and

customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. However, the ordinary meaning of a term as understood by a person skilled in the art is "often not immediately apparent and because patentees frequently use terms idiosyncratically courts should look to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id.* at 1314 (quoting *Innova*, 381 F.3d at 1116). These sources include various forms of intrinsic evidence such as "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence," *Innova*, 381 F.3d at 1116, and extrinsic evidence such as "expert and inventor testimony, dictionaries, and learned treatises." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995).

In construing a patent claim, the court first looks at the "intrinsic evidence of record . . . [which is] the patent itself, including the claims, the specification and, if in evidence the prosecution history." *Vitronics*, 90 F.3d at 1582. Intrinsic evidence is the primary and most significant source of evidence in construing the patent claims. *Id.* The court begins its consideration of intrinsic evidence by considering the claim terms, which are the terms used to define "'what it is that is patented.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Merrill v. Yeomans*, 94 U.S. 568, 570 (1876)). The Court also looks at the context in which the claim term is being used. *See Phillips*, 415 F.3d at 1314 (stating that "the context in which a term is used in the asserted claim can be highly instructive."); *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) (stating that "the context of the surrounding words of the claim also must be considered in determining the ordinary and

customary meaning of those terms."). The court also looks at other claims in the patent "[b]ecause claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips*, 415 F.3d at 1314. The Court also considers the specification of which the claims are a part. The specification is a written description of the invention and the drawings which are submitted to the patent office. The claims previously discussed are the numbered paragraphs which appear at the end of the specification. Thus, the claims must be read in light of the specification and cannot be construed in a manner which is inconsistent with the specification. *See Markman*, 517 U.S. at 389 (stating that a "term can be defined only in a way that comports with the instrument as a whole."); *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003) ("A fundamental rule of claim construction is that terms in a patent document are construed with the meaning with which they are presented in the patent document. Thus claims must be construed so as to be consistent with the specification, of which they are a part.") (internal citations omitted).

In considering the specification, it is important to note that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." *Phillips*, 415 F.3d at 1317. If a patentee does choose to act as his or her own lexicographer it is his or her own meaning which controls. *See Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) ("The patentee may demonstrate an intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."); *Vitronics Corp.*, 90 F.3d at 1582 ("Although words in a claim are generally to

be given their ordinary and customary meaning, a patentee may choose to be his own lexiographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history."). "[T]he specification is always highly relevant to the claim construction analysis [and is] [u]sually . . . dispositive . . . [as] it is the single best guide to the meaning of a disputed term." *Id.* In considering the intrinsic evidence, the prosecution history of the claim is also considered if it is in evidence. *Phillips*, 415 F.3d at 1317. The prosecution history is the "complete record of all the proceedings before the Patent and Trademark Office ("PTO"), including any express representations made by the applicant regarding the scope of the claims." *Vitronics*, 80 F.3d at 1582. "The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'" *Chimie v. PPG Industries, Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (quoting *ZMI Corp. v. Cardiac Resucitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988)). However, the Federal Circuit has cautioned that "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.

    Finally, after considering the intrinsic evidence, the Court may look to extrinsic evidence such as "'expert and inventor testimony, dictionaries, and learned treatises.'" *Id.* (quoting *Markman*, 52 F.3d at 980). However, "[i]n most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term and [i]n such circumstances, it is improper to rely on extrinsic evidence." *Vitronics*, 90 F.3d at 1583. It is best if the court

"focuses at the outset on how the patentee used the claim term in the claims, specification, and prosecution history, rather than starting with a broad definition and whittling it down." *Phillips*, 415 F.3d at 1321.

    **B.**    **Disputed Terms**

        **1. Flat**

Claim 5 describes the patented device as "a flat and rectangular shaped member." The parties dispute the construction of the term "flat." Plaintiff argues it should be construed to mean "providing an essentially horizontal surface when laid out for use." Pl. Brief on Claim Construction at 9. Plaintiff points to Webster's Third New International Dictionary for support, citing its definition as "horizontal or nearly so and without significant curvature or inclination [and capable of being] arranged or laid out so as to be level, smooth or even." Id. at 10. Defendants argue the construction of "flat" should be "characterized by a horizontal line or tracing without peaks or depressions," Def. Claim Construction Chart at 1, or "completely flat," Def. Mem. in Support of Proposed Claim Construction at 17. There was little debate about the term "flat" during the *Markman* hearing. Tr. at 9-10. This Court will construe the term "flat" as having a surface which is "horizontal or nearly so without significant curvature or inclination and without noteworthy elevations or depression," level, smooth, or even. Webster's Third New International Dictionary, Unabridged 865 (1969).

        **2. Rectangular**

Plaintiff proposes defining "rectangular" as "having parallel, opposing edges disposed at right angles to one another." Tr. at 10. Defendants propose, in one document, that a "rectangle" be defined as "a four sided figure with opposite sides parallel and adjoining sides

intersecting at right angles, the area of which equals the product of its length times its width." Def. Proposed Order on Claim Construction (DE # 47-2). In another document, Defendants suggest the proper construction to be "shaped like a rectangle, a parallelogram, a quadrilateral with opposite sides parallel." Def. Claim Construction Chart (DE # 38). There was no significant debate on this term during the *Markman* hearing. This Court will construe the term "rectangular" to mean having four sides, with opposite sides parallel, and four right angles.

### 3. Creases

Claim 5 describes the patented device as having "a plurality of creases formed in said member which are oriented in vertical and horizontal directions." Plaintiff suggests defining "creases" as "thin integral strips of pliable material defined by grooves or ridges in the flat rectangular shaped member about which the member is folded in use," Pl. Brief on Claim Construction (DE # 40) at 12, or as "a line, a groove, or a ridge made by folding a pliable substance." Tr. at 10. Defendants would define creases as "marking line, marks, or ridges made by slits in an outer layer of the material, folding a pliable substance, and not hinges or living hinges." Def. Claim Construction Chart (DE # 38). Defendants argue that hinges were specifically disclaimed by Plaintiff when he stated that "the use of a hinged apparatus can by no stretch of the imagination be considered equivalent to an apparatus employing creases." in order to distinguish his invention from a "Garment Folding Tray" patented in 1928. Def. Mem. in Support of Proposed Claim Construction (DE # 37) at 2. Defendants assert that living hinges must be specifically excluded from the definition because Plaintiff's patent does not include instructions for making living hinges, and because living hinges cannot cross each other in the manner shown in the patent. Id. at 15-16. Defendants' arguments go more to whether the

patent is enabled for construction in plastic, rather than the definition of "crease." Accordingly, this Court will construe "crease" to

mean a line, a groove, or a ridge made by folding a pliable substance and not a hinge.

### 4. Half

Claim 5 describes the patented device as having "horizontal creases allowing said member to be manually folded in half to reduce the vertical dimension of said shirt." Plaintiff suggests "folded in half should be interpreted to mean: 'bent at its approximate mid-point along a horizontal crease.'" Pl. Brief on Claim Construction (DE # 40). Defendant argues that "half" should be defined as "one of two equal parts into which a thing is divisible . . . also: a part of a thing approximately equal to the remainder." Def. Mem. in Support of Proposed Claim Construction (DE # 37) at 19, Def. Claim Construction Chart (DE # 38). This Court holds that "folded in half" is a clear and unambiguous description, and therefore requires no construction.

### 5. A Member

Claim 5 refers to the patented device as a "member." Defendants ask that the term "member" be defined as "a single part, made of cardboard or a suitable plastic material that if scored and folded will fold repeatedly and uniformly without breaking." Def. Claim Construction Chart (DE # 38). Plaintiff suggests that the term be construed to mean the patented device is unitary, composed of one piece. Tr. at 8. Defendant seeks to include the enablement restrictions into the definition of "member." Def. Mem. in Support of Proposed Claim Construction (DE # 37) at 18. This Court holds that the term "member," by the terms of the claim, in context, refers to the unit which embodies the patent.

III.   **Conclusion**

Based on the foregoing, it is

ORDERED AND ADJUDGED that the disputed terms of the 052 patent are to be construed as described above.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of May, 2007.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record